# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| LJH, LTD. | § | |
| | § | |
| V. | § | CASE NO. 4:15-CV-639 |
| | § | Judge Mazzant |
| IRA J. JAFFE; and JAFFE, RAITT, HEUER | § | |
| & WEISS, P.C. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Ira J. Jaffe and Jaffe, Raitt, Heuer & Weiss, P.C.'s Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and (6) (Dkt. #27). After reviewing the relevant pleadings, the Court finds that the motion should be granted in part and denied in part.

## BACKGROUND

The above-referenced case concerns a $57.3 million transaction to purchase oil fracking equipment and real estate between LJH, Ltd. ("LJH") and three entities, Go Frac, LLC ("Go Frac"), WRB Trucking Company, LLC, and GF Cambridge, LLC (collectively, the "Sellers") (Dkt. #27 at p. 1). In July 2015, Ira Jaffe ("Jaffe"), acting on behalf of Jaffe, Raitt, Heuer & Weiss, P.C. (the "Jaffe Firm," collectively with Jaffe, the "Jaffe Defendants"), made one or more telephone calls to Grayson County, Texas resident Lacy Harber ("Harber") for the purpose of the sale of oilfield and fracking equipment (Dkt. #10 at p. 9). The equipment and realty Jaffe and Harber discussed were owned by one or more entities of which Jaffe was "an owner and authorized representative." (Dkt. #10 at pp. 9-10). Jaffe created contracts for Harber to execute for the sale of the realty and equipment, which Harber signed (Dkt. #10 at p. 10). Harber, acting as a representative for LJH, acquired an equitable lien on the equipment and property, and

1

advanced to Sellers $20,000,000 for the equipment purchase, and $4,000,000 for the real property (Dkt. #10 at p. 5).

On or about July 27, 2015, Jaffe travelled to Grayson County, Texas, where he met with Harber and Harber's accountant, Jim Keller, who represented LJH, "to negotiate new terms relating to the sale of the equipment and real property…." (Dkt. #10 at p. 6). At this meeting, Jaffe disclosed issues to Harber, including the following: (1) he was an attorney; (2) he represented the potential seller, Go Frac; (3) he was a minor partner, with other individuals, in Go Frac; (4) Go Frac was insolvent; (5) Defendants needed to accelerate the closing date; (6) other claimants existed regarding the equipment LJH was to receive; (7) that future lawsuits could result from the sale and purchase; and (8) Jaffe and his law firm would represent Harber and/or LJH in a proceeding (Dkt. #10 at p. 6). Following this meeting, "LJH backed out of the deal." (Dkt. #27 at p. 1).

On August 4, 2015, LJH filed its Original Petition in the 15th Judicial District Court of Grayson County, Texas, against Comerica Incorporated and the Jaffe Defendants (Dkt. #3). On September 18, 2015, the Jaffe Defendants removed the case to this Court alleging diversity under 28 U.S.C. § 1332, and removal pursuant to 28 U.S.C. § 1441 (Dkt. #1). Additionally, the Jaffe Defendants alleged that removal was proper as Comerica, Inc. had been improperly joined (Dkt. #1 at pp. 4-5). On January 6, 2016, the Court denied LJH's Motion to Remand, and dismissed Comerica Incorporated and Comerica Bank without prejudice (Dkt. #25 at p. 9).

On February 2, 2016, Defendants filed their Motion to Dismiss the First Amended Complaint (Dkt. #27). On February 19, 2016, LJH filed its response (Dkt. #29). On February 29, 2016, Defendants filed their reply (Dkt. #30). On March 10, 2016, LJH filed its sur-reply (Dkt. #31). On March 15, 2016, Defendants filed their Notice of Very Recent Supplemental

Authority from Fifth Circuit (Dkt. #33). Also on March 15, 2016, LJH filed its response to Defendants' notice (Dkt. #34).

**LEGAL STANDARD**

*Motion to Dismiss for Lack of Personal Jurisdiction*

In determining whether there is personal jurisdiction over a non-resident defendant, a two-step analysis is conducted. *Ham v. La Cinega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993). First, absent a controlling federal statute regarding service of process, the court must determine whether the long-arm statute of the forum state permits the exercise of jurisdiction. *Id.* Second, it must be determined whether the exercise of jurisdiction comports with due process. *Id.*

The Texas long-arm statute extends to the limits of due process under the Constitution. *Command-Aire Corp. v. Ontario Mechanical Sales and Service, Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). As a result, the determination of a non-resident's amenability to personal jurisdiction under the Texas long-arm statute is a federal style inquiry as to whether jurisdiction comports with federal constitutional guarantees. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990). The due process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) the defendant has purposefully availed himself of the benefits and protections of the forum state; and (2) the exercise of jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)).

General jurisdiction occurs when "a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum…" *Helicopteros*, 466 U.S. at 414 n. 9. General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum. *Id.* at 416.

Specific jurisdiction exists where the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984). For the Court to exercise specific jurisdiction, it must find: (1) that the foreign defendant purposely directed his activities at residents of the forum and (2) the cause of action arose from or is connected with such activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). Specific jurisdiction may be established if the defendant's conduct constitutes only one act in the forum state and that act is substantially related to the suit. *See Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007). However, it is essential that in each case there is an act by which the defendant purposefully availed itself of the benefits and protections of the forum state. *Hanson v. Denkla*, 357 U.S. 235, 253 (1958).

After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, the party seeking to invoke the court's jurisdiction bears the burden of establishing the district court's jurisdiction. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When, as here, no evidentiary hearing is conducted, "the party seeking to assert jurisdiction must present sufficient facts as to make out only a prima facie case supporting jurisdiction." *Id.* (citation omitted). When considering the motion to dismiss, the court must accept as true the plaintiff's uncontroverted allegations and resolve all factual disputes in favor of plaintiff. *Id.* (citations omitted).

*Motion to Dismiss for Failure to State a Claim*

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant. The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement…showing

that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The claims must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Rule 12(b)(6) provides that a party may move for dismissal of an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In deciding a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Twombly*, 550 U.S. at 555; *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). "The Supreme Court recently expounded upon the *Twombly* standard, explaining that '[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez*, 577 F.3d at 603 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.*

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court identifies conclusory allegations and proceeds to disregard them, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 681. Second, the Court "consider[s] the factual allegations in [the complaint]

to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In determining whether to grant a motion to dismiss, a district court generally may not "go outside the complaint." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). However, a district court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.*

## ANALYSIS

*Motion to Dismiss for Lack of Personal Jurisdiction*

Defendants contend that the Court should dismiss Plaintiff's First Amended Complaint because they are not subject to the Court's jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Specifically, Defendants contend that they are not subject to the Court's general jurisdiction because their contacts are not systematic and continuous (Dkt. #27 at p. 8). Furthermore, they claim that specific jurisdiction is lacking because their contacts with Texas, relating to the transaction at issue, do not rise to the level of minimum contacts (Dkt. #27 at p. 8).

A nonresident defendant's minimum contacts with the forum state can establish either specific jurisdiction or general jurisdiction. Specific jurisdiction exists if the Court determines that (1) the foreign defendant purposely directed his activities at residents of the forum state, and (2) the cause of action arose from or is connected with such activities. *Burger King Corp.*, 471 U.S. at 472-73. "General jurisdiction, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although not related to the plaintiff's cause of action,

are 'continuous and systematic.'" *Alpine View*, 205 F.3d at 215 (citing *Helicopteros*, 466 U.S. at 415-16).

To make a prima facie showing of general jurisdiction, Plaintiff must produce evidence that affirmatively shows that Defendants' "contacts with Texas that are unrelated to the litigation are sufficient to satisfy due process requirements." *Id.* at 217 (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 327 (5th Cir. 1996)). "Those unrelated contacts must be substantial, continuous and systematic." *Id.* The Fifth Circuit has noted that "general jurisdiction can be assessed by evaluating contacts of the defendants with the forum over a reasonable numbers of years, up to the date the suit was filed." *Id.* (quoting *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)).

After examining the evidence currently before the Court, it is clear that Plaintiff cannot meet its burden to show that the Jaffe Defendants' contacts with Texas are sufficient to establish general jurisdiction. At best, the evidence establishes that the Jaffe Defendants have represented Go Frac in a Texas lawsuit on a previous occasion, and Jaffe, as an individual, "has an 'indirect' ownership interest in limited liability companies that are among the members of Go Frac." (Dkt. #29 at p. 6). Although Go Frac appears to be a Texas corporation, Jaffe, himself, is not a Texas resident, and does not have sufficient ties to Texas for general personal jurisdiction to attach. *See Rolls-Royce Corp. v. Heros, Inc.*, 576 F. Supp. 2d 765, 787 (N.D. Tex. 2008) ("[U]nder the fiduciary shield doctrine, 'an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over that individual though the state has in personam jurisdiction over the corporation[.]'"

However, the Court must also consider whether it can exercise specific jurisdiction over Defendants. Specific jurisdiction exists where the plaintiff alleges a cause of action that grows

out of or relates to the contacts between the defendant and the forum state. *Helicopteros*, 466 U.S. at 414 n. 8. The Fifth Circuit has concluded that specific jurisdiction is "a claim-specific inquiry: 'A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim.'" *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 675 (S.D. Tex. 2014) (quoting *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)). The Fifth Circuit has established a three-step analysis for determining if specific jurisdiction exists: "(1) whether the defendant has minimum contacts with the forum state[;]…(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Id.* (quoting *Seiferth*, 472 F.3d at 271). It is a fact-intensive inquiry, and no single contact is controlling. *Id.* "'[F]oreseeability [] is critical to the due process analysis…the defendant's conduct and connection with the forum [s]tate [must be] such that he should reasonably anticipate being [hailed] into court there.'" *Alpine View*, 205 F.3d at 215 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "Specific jurisdiction over a nonresident…is appropriate when [he] has purposefully directed [his] activities at the forum state and the litigation results from the alleged injuries that 'arise out of or relate to' those activities." *Id.* (quoting *Burger King Corp.*, 471 U.S. at 472 (internal quotations omitted)).

The Jaffe Defendants assert that under *Moncrief* and *Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983), Jaffe's communications to Harber and his single visit to Texas are insufficient to support a finding of personal jurisdiction (Dkt. #27 at p. 11). However, the Court finds that the cases are distinguishable from the present case. In the cases cited by the Jaffe Defendants, the Court was determining whether there was sufficient personal

jurisdiction to bind defendants in a breach of contract action. In the present case, Plaintiff has alleged the following claims: (1) negligent misrepresentation; (2) fraud; (3) conversion; (4) constructive trust; (5) unjust enrichment; (6) money had and received (*See* Dkt. #10). From a review of the evidence, it is clear that Plaintiff has met its burden for specific jurisdiction.

First, there is evidence that the causes of action in this case arise from the Jaffe Defendants' activities within the state. Plaintiff alleges that Defendants made negligent misrepresentation about the "full indebtedness" of the property being negotiated between the parties, and Plaintiff was "misled into a false sense of contractual security." (Dkt. #10 at p. 14). The representations that led to Plaintiff's fraud allegation also took place within Texas (*See* Dkt. #10 at p. 14) (Non-disclosure that Jaffe was an attorney for the selling/contracting parties and failure to disclose the insolvency of the Sellers).

"Once it has been decided that a defendant purposefully established such minimum contacts within the forum state, the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999) (quoting *Gundle Lining Constr. Corp. v. Adams Cty. Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996)). The relationship between the defendant and the forum state must be such that it is reasonable to require the defendant to defend the particular suit which is brought there. *Id.* (citation omitted). When determining fundamental fairness, the Court will normally examine (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in further fundamental substantive social policies. *Id.*; *The Richards Grp. v. Brock*, No. 3:06-CV-0799-D, 2007 WL 700896, at *2 (N.D. Tex. Mar. 7, 2007).

In the present case, a finding of jurisdiction does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.*, 326 U.S. at 316. Although the Jaffe Defendants reside in Michigan, there would be little burden on Defendants if the Court retains jurisdiction. Ira Jaffe travelled to Texas, on behalf of himself and the Jaffe Firm, for the purpose of the transaction discussed in the present lawsuit (Dkt. #10 at p. 6). Additionally, the forum state has an interest in this case. The Plaintiff is a Texas limited partnership, with its principal office being located in Grayson County, Texas (Dkt. #10 at p. 2). Also, the equipment and realty Plaintiff sought to acquire is located within Texas (*See* Dkt. #10 at p. 4). The harm Plaintiff suffered from Defendants' alleged actions took place either directly or indirectly in Texas (Dkt. #10 at pp. 14-18). This case arises from actions or representations made by Defendants in Texas or directly or indirectly affecting a Texas Plaintiff (Dkt. #10 at pp. 13-18). A finding of jurisdiction comports with due process; therefore, the Court finds that specific jurisdiction is appropriate in this case.

*Motion to Dismiss for Failure to State a Claim—Attorney Immunity Doctrine*

Defendants also assert that the First Amended Complaint should be dismissed in its entirety based on the attorney immunity doctrine (Dkt. #27 at p. 23).

"Texas common law is well settled that an attorney does not owe a professional duty of care to third parties who are damaged by the attorney's negligent representation of a client." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (citing *Barcelo v. Elliott*, 923 S.W.2d 575, 577 (Tex. 1996)); *see also McCamish, Martin, Brown & Loeffler v. F.E. Appling Interests*, 991 S.W.2d 787, 792 (Tex. 1999) (explaining that a lack of privity precludes attorneys' liability to non-client for legal malpractice). "This doctrine—often termed 'attorney immunity'—derives from the policy goal of protecting the public's…interest in loyal, faithful,

and aggressive representation by the legal profession." *Reagan Nat'l Adver. of Austin, Inc. v. Hazen*, No. 03-05-00699-cv, 2008 WL 2938823, at *2 (Tex. App.—Austin, July 29, 2008, no pet.) (mem. op.) (internal citations omitted); *see Cantey Hanger, LLP*, 467 S.W.3d at 481 (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet. denied)). The attorney immunity doctrine "recognizes that '[i]f an attorney could be held liable to an opposing party for statements made or actions taken in the course of representing his client, he would be forced constantly to balance his own personal exposure against his client's best interest.'" *Reagan Nat'l Adver. of Austin, Inc.*, 2008 WL 2938823, at *2 (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). Therefore, the attorney immunity doctrine is necessary "to avoid the inevitable conflict that would arise if [an attorney was] 'forced constantly to balance his own potential exposure against his client's best interest.'" *Troice v. Proskauer Rose, L.L.P.*, 816 F.3d 341, 346 (5th Cir. 2016) (quoting *Cantey Hanger LLP*, 467 S.W.3d at 483 (quoting *Alpert*, 178 S.W.3d at 405)).

"Texas courts have developed a more comprehensive affirmative defense protecting attorneys from liability to non-clients, stemming from the broad declaration over a century ago that 'attorneys are authorized to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages.'" *Cantey Hanger, LLP*, 467 S.W.3d at 481 (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd)). Therefore, in accordance with its purpose, "as a general rule, attorneys are immune from civil liability to non-clients 'for actions taken in connection with representing a client in litigation.'" *Cantey Hanger, LLP*, 467 S.W.3d at 481; *see also Toles v. Toles*, 113 S.W.3d 899, 910 (Tex. App.—Dallas 2003, no pet.); *Renfroe v. Jones & Assocs.*, 947 S.W.2d 285, 287-88 (Tex. App.—Fort Worth 1997, pet. denied).

"Even conduct that is 'wrongful in the context of the underlying suit' is not actionable if it is 'part of the discharge of the lawyer's duties in representing his or her client.'" *Cantey Hanger, LLP*, 467 S.W.3d at 481; *see Toles*, 113 S.W.3d at 910-11; *Alpert*, 178 S.W.3d at 406; *see also Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *7 (Tex. App.—Houston [1st Dist.] Mar. 20, 2008, pet. denied) (mem. op. on reh'g). However, "attorneys are not protected from liability to non-clients for their actions when they do not qualify as 'the kind of conduct in which an attorney engages when discharging his duties to his client.'" *Cantey Hanger, LLP*, 467 S.W.3d at 482 (quoting *Dixon Fin. Servs.*, 2008 WL 746548, at *9); *see also Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (noting that "it is the kind of conduct that is controlling, and not whether that conduct is meritorious or sanctionable."). Therefore, "the dispositive question is whether the attorney's conduct was part of the discharge of his duties in representing a party in a lawsuit." *Taco Bell Corp. v. Cracken*, 939 F. Supp. 528, 532 (N.D. Tex. 1996). "The types of conduct to which immunity applies are those involving 'the office, professional training, skill, and authority of an attorney.'" *Reagan*, 2008 WL 2938823, at *3 (quoting *Miller v. Stonehenge/Fasa Texas, JDC, L.P.*, 993 F. Supp. 461, 464 (N.D. Tex. 1988)).

The Fifth Circuit has stated that "the litigation privilege provide[s] true immunity under Texas law and, thus, orders denying that immunity [are] appealable." *Troice*, 816 F.3d at 347 (citing *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 992 (5th Cir. 1999)). Additionally, the Fifth Circuit has recognized that "[t]he Texas Supreme Court has described attorney immunity in the very same terms: Conduct covered by attorney immunity is 'not actionable,' and the doctrine provides 'immun[ity] from civil liability.'" *Id.* (quoting *Cantey Hanger, LLP*, 467 S.W.3d at

481). Therefore, because Defendants have asserted the attorney immunity bar, in the present case, the Court will address the issue at this time.

Plaintiff asserts that Jaffe was not acting in his capacity as an attorney when he negotiated the terms of the "Equipment Purchase Agreement" with Harber (Dkt. #29 at p. 13). Specifically, Plaintiff contends that "[t]he July 10, 2015 'Equipment Purchase Agreement' listed Ira J. Jaffe as 'Authorized Representative' for Go Frac, LLC and WRB Trucking Company, LLC, not as attorney for those entities." (Dkt. #29 at p. 13). Additionally, Plaintiff asserts that Jaffe has an "indirect" ownership interest in Go Frac (Dkt. #29 at p. 13). The Jaffe Defendants assert that "[a]ll of the conduct alleged by LJH in the [First Amended Complaint] relates to alleged acts or omissions of the Jaffe Defendants in connection with their representation of the Sellers in the transaction." (Dkt. #27 at p. 25). Additionally, the Jaffe Defendants assert that they still meet the criteria under the attorney immunity doctrine, "regardless of Ira Jaffe's minimal, indirect ownership interest in Go Frac…." (Dkt. #30 at p. 9).

As the Jaffe Defendants raise this issue at the 12(b)(6) level, the Court must accept as true all well-pleaded facts contained in the plaintiff's complaint and view them in the light most favorable to the plaintiff. *See Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The First Amended Complaint shows that Harber and Jaffe communicated regarding the realty and equipment at issue (Dkt. #10 at p. 4). Jaffe was an "owner and authorized representative" of one or more of the entities that owned the equipment and realty (Dkt. #10 at p. 3). Harber signed three contracts based on the Jaffe Defendants' representations and disclosures, and afterwards, at the request of Jaffe, sent a $20,000,000 advance for the equipment, and a $4,000,000 advance for the realty to a trust held by the Jaffe Firm, which was later transferred to Comerica. (Dkt. #10 at pp. 3-4).

Jaffe requested a meeting with Harber, in order to discuss closing details (Dkt. #10 at p. 5). On or about July 27, 2015, Jaffe flew to Grayson County, Texas, and met with Harber, and Harber's accountant, Jim Keller, on behalf of LJH, to negotiate new terms relating to the sale (Dkt. #10 at p. 6). At this meeting, Jaffe disclosed issues to Harber, including the following: 1) he was an attorney; (2) he represented the potential seller, Go Frac; (3) he was a minor partner, with other individuals, in Go Frac; (4) Go Frac was insolvent; (5) Defendants needed to accelerate the closing date; (6) other claimants existed regarding the equipment LJH was to receive; (7) that future lawsuits could result from the sale and purchase; and (8) Jaffe and his law firm would represent Harber and/or LJH in a proceeding (Dkt. #10 at p. 6).

The Court finds that at the Rule 12(b)(6) motion to dismiss stage, the Court cannot conclusively determine that Ira Jaffe was acting in his capacity as an attorney when the underlying transaction with Harber occurred. Although it initially appears that Jaffe's conduct was that of an attorney, he was also a minor partner in Go Frac, and was listed as their "owner and authorized representative." (Dkt. #10 at pp. 4, 10). Although attorney immunity does bar liability to a non-client when an attorney is acting in his legal capacity, it is not conclusive when the attorney is acting outside of his legal capacity. *See JJJJ Walker, LLC v. Yollick*, 447 S.W.3d 453, 470 (Tex. Ct. App.—Houston [14th Dist.] 2014, pet. denied).

For instance, "[i]t is well-established that corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation." *JJJJ Walker*, 447 S.W.3d at 470. The First Amended Complaint states that Jaffe was listed as the authorized representative in his actions with Harber; as such, it is plausible that he was acting as an agent of the Sellers. An attorney should not be "held to a lower standard than any other agent simply because he also happens to be the principal's attorney." *See JJJJ Walker*, 447 S.W.3d at 470.

14

However, the Court finds that even if Ira Jaffe was acting in his ownership capacity of Go Frac, the Jaffe Firm would have been providing legal representation for the duration of Harber's transaction with the Sellers. First, Plaintiff asserts that Ira Jaffe, on behalf of the Jaffe Defendants, made one or more telephone calls to, and had conversations with, Harber regarding the sale of oilfield and fracking equipment, and related realty (Dkt. #10 at p. 3). As previously mentioned, the Court's inquiry focuses on the kind, not the nature, of the attorney's conduct. *Taco Bell*, 939 F. Supp. at 532-33. Contacting a potential buyer regarding a significant sale of property and equipment is not conduct that would be "foreign to the duties of an attorney[.]" *Cantey Hanger*, 467 S.W.3d at 485. Plaintiff also asserts that Jaffe negotiated and prepared the agreements (*See* Dkt. #10 at pp. 4-5). This also is not conduct that would be "foreign to the duties of an attorney[.]" *Cantey Hanger*, 467 S.W.3d at 485. Throughout the First Amended Complaint, Plaintiff asserts that Ira Jaffe was "acting on behalf of all Jaffe Defendants…" (Dkt. #10 at p. 3; *see* Dkt. #10 at pp. 4-7, 9-10). It is unclear to the Court at this time whether Ira Jaffe was acting solely in his capacity as an attorney, or given his personal ownership interest in Go Frac, as an agent for Go Frac and the Sellers. However, the Jaffe Firm did not have a personal stake in the sale of the equipment and realty, and thus, if it was involved in the transaction at all, its actions were purely those of legal representation, which must be protected at this time.[1]

Therefore, it is possible, with the information that is before the Court at this stage of the case, that Ira Jaffe was acting based upon his ownership interest in Go Frac, and not solely as an attorney; however, the Jaffe Firm was solely providing legal representation to Go Frac. Because

---

[1] The Court finds that if Ira Jaffe was acting solely based on his personal interest in Go Frac, his actions could not implicate the Jaffe Firm, as they would be outside the scope of his actions as an attorney. Additionally, while it is possible that other evidence will demonstrate that Ira Jaffe was acting in his capacity as an attorney during the alleged transaction with Harber, the Court cannot consider outside evidence at this 12(b)(6) stage, and must make its determination off the sufficiency of the First Amended Complaint. At this time, the Court cannot conclusively make its determination as to Ira Jaffe based upon the allegations in Plaintiff's First Amended Complaint.

the Jaffe Firm was acting as Go Frac's attorney within the context of the transaction that occurred between Sellers and Harber, Texas law grants the Jaffe Firm immunity for its actions.

After reviewing the relevant pleadings, the Court finds that the Jaffe Defendants have not demonstrated that Ira Jaffe was acting solely within his legal capacity at this time. However, the Jaffe Firm was acting solely within its legal capacity during the entirety of the transaction, and thus, the claims against the Jaffe Firm must be dismissed under the attorney immunity bar. Therefore, Defendants' motion to dismiss is granted in part and denied in part.

Defendants also request that the Court dismiss Plaintiff's claims for negligent misrepresentation, fraud, conversion, constructive trust, unjust enrichment, money had and received, conspiracy, and its request for a declaratory judgment (*See* Dkt. #27). After reviewing the relevant pleadings, the Court finds that Plaintiff has stated plausible claims for purposes of defeating a Rule 12(b)(6) motion to dismiss.

## CONCLUSION

It is therefore **ORDERED** that Defendants Ira J. Jaffe and Jaffe, Raitt, Heuer & Weiss, P.C.'s Motions to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and (6) (Dkt. #27) is hereby **GRANTED IN PART AND DENIED IN PART.**

It is further **ORDERED** that Plaintiff's claims against Jaffe, Raitt, Heuer & Weiss, P.C. are **DISMISSED** with prejudice.

**SIGNED this 11th day of July, 2016.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE