# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| LJH, LTD. § | |
| § | |
| v. § | Civil Action No. 4:15-CV-00639 |
| § | Judge Mazzant |
| IRA J. JAFFE; and JAFFE, RAITT, HEUER § | |
| & WEISS, P.C. § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Ira J. Jaffe and Jaffe, Raitt, Heuer & Weiss, P.C.'s Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. #74). After reviewing the relevant pleadings, the Court determines the motion should be granted in part and denied in part.

## BACKGROUND

This case concerns the sale and purchase of realty and equipment between LJH, Ltd. ("LJH") and three entities, Go Frac, LLC ("Go Frac"), WRB Trucking Company, LLC, and GF Cambridge, LLC (collectively, the "Sellers") (Dkt. #74 at p. 2). In July 2015, Ira Jaffe ("Jaffe"), acting on behalf of Jaffe, Raitt, Heuer & Weiss, P.C. (the "Jaffe Firm," collectively with Jaffe, the "Jaffe Defendants") made one or more telephone calls to Lacy Harber ("Harber"). Jaffe contacted Harber seeking to sell oil fracking equipment and real estate. The equipment and real estate that Jaffe and Harber discussed were owned by one or more entities of which Jaffe was "an owner and authorized representative" (Dkt. #73 at p. 9). Jaffe drafted contracts for the sale of the real estate and equipment, and Harber signed them. Harber, acting as representative for LJH, acquired an equitable lien on the real estate and equipment, advancing to the Sellers $20,000,000 for the equipment and $4,000,000 for the real estate. On or about July 27, 2015, Jaffe travelled to Grayson County, Texas, where he met with Harber and Harber's accountant "to

negotiate new terms relating to the sale of the equipment and real property" (Dkt. #73 at p. 5). At this meeting, Jaffe disclosed issues related to the sale that caused LJH to back out of the deal.

On August 4, 2015, LJH filed its Original Petition in the 15th Judicial District Court of Grayson County, Texas, against the Jaffe Defendants, alleging a number of claims including fraud, negligent misrepresentation, conversion, conspiracy, and money had and received. LJH also seeks actual and punitive damages, and a constructive trust over the relinquished funds due to principles of unjust enrichment (Dkt. #3). On September 18, 2015, the Jaffe Defendants removed the case to this Court alleging diversity pursuant to 28 U.S.C. § 1332 and removal pursuant to 28 U.S.C. § 1441 (Dkt. #1).

On July 28, 2016, the Court withdrew its previous order addressing Defendants' Motion to Dismiss First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(2) and (6) (Dkt. #72). The Court allowed LJH to file a Second Amended Complaint to assert facts to overcome the Jaffe Defendants' assertion of the attorney immunity doctrine. LJH filed its Second Amended Complaint on August 11, 2016 (Dkt. #73). On August 26, 2016, the Jaffe Defendants filed their Motion to Dismiss the Second Amended Complaint (Dkt. #74). On September 12, 2016, LJH filed its response (Dkt. #75). On September 22, 2016, the Jaffe Defendants filed a reply (Dkt. #76). On October 3, 2016, LJH filed its sur-reply (Dkt. #77).

## LEGAL STANDARD

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "'A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009)

3

(citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The Jaffe Defendants argue the conduct alleged by LJH in the Second Amended Complaint was made in the course of representing the Sellers in an asset sale transaction. As such, the Jaffe Defendants assert LJH's claims should be dismissed based on the attorney immunity doctrine. LJH responds that Jaffe was not acting in his capacity as an attorney when he negotiated the terms of the "Equipment Purchase Agreement" with Harber. Specifically, LJH contends the July 10, 2015 Equipment Purchase Agreement listed Jaffe as an authorized representative for Go Frac and WRB Trucking Company, LLC and not as an attorney for those entities. Further, LJH maintains the Jaffe Firm is liable for ratifying Jaffe's actions.

The attorney immunity doctrine provides that attorneys are "immune from civil liability to a non-client 'for actions taken in connection with representing a client in litigation.'" *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quoting *Alpert v. Crain, Caton & James, P.C.*, 178 S.W.3d 398, 405 (Tex. App.—Houston [1st Dist.] 2005, pet. denied)). "Even conduct that is 'wrongful in the context of the underlying suit' is not actionable if it is 'part of the discharge of the [attorney's] duties in representing his or her client'" and not "entirely foreign to the duties of an attorney." *Id.* at 481–82 (citations omitted). The purpose of the doctrine is to allow attorneys broad latitude "to practice their profession, to advise their clients and interpose any defense or supposed defense, without making themselves liable for damages."

*Id.* at 481 (quoting *Kruegel v. Murphy*, 126 S.W. 343, 345 (Tex. Civ. App.—Dallas 1910, writ ref'd)). Accordingly, providing immunity ensures "loyal, faithful, and aggressive representation by attorneys employed as advocates." *Id.* (quoting *Mitchell v. Chapman*, 10 S.W.3d 810, 812 (Tex. App.—Dallas 2000, pet denied)). The dispositive question is whether the conduct was "'the kind in which an attorney engages when discharging his duties to a client.'" *Id.* at 482 (quoting *Dixon Fin. Servs., Ltd. v. Greenberg, Peden, Siegmyer & Oshman, P.C.*, No. 01-06-00696-CV, 2008 WL 746548, at *9 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).

The Second Amended Complaint indicates the following facts the Court must accept as true and view in the light most favorable to LJH. *Bowlby*, 681 F.3d at 219. Harber and Jaffe communicated regarding the realty and equipment at issue (Dkt. #73 at p. 9). Jaffe was an "owner and authorized representative" of one or more of the entities that owned the equipment and realty (Dkt. #73 at p. 9). Harber signed three contracts based on the Jaffe Defendants' representations and disclosures, and afterwards, at the request of Jaffe, sent a $20,000,000 advance for the equipment and a $4,000,000 advance for the realty, which were held in trust by the Jaffe Defendants (Dkt. #73 at pp. 3–4). On or about July 27, 2015, Jaffe flew to Grayson County, Texas, and met with Harber, and Harber's accountant, Jim Keller, on behalf of LJH, to negotiate new terms relating to the sale (Dkt. #73 at p. 4). At this meeting, Jaffe disclosed issues to Harber, including: (1) he was an attorney; (2) he was a minor partner, with other individuals, in Go Frac; (3) Go Frac was insolvent; (4) Defendants needed to accelerate the closing date; (5) other claimants existed regarding the equipment LJH was to receive; (6) that future lawsuits could result from the sale and purchase; and (7) Jaffe and his law firm would represent Harber and/or LJH in a proceeding (Dkt. #73 at p. 5).

At the Rule 12(b)(6) stage, the Court cannot conclusively establish that Jaffe was acting in his capacity as an attorney when the underlying transaction with Harber occurred. Although Jaffe's alleged conduct appears to be that of an attorney, Jaffe was also a minor partner in Go Frac and was listed as its "owner and authorized representative" (Dkt. #73 at pp. 9, 14). Attorney immunity bars an attorney's liability to a non-client when the attorney acts in his legal capacity. *Cantey Hanger*, 467 S.W.3d at 481. However, such immunity does not apply when the attorney acts outside of his legal capacity. *Id.* at 482. Here, it is possible, based on the allegations in the Second Amended Complaint, that Jaffe was acting based upon his ownership interest in Go Frac and not solely as an attorney. Therefore, the Court refuses to grant Jaffe attorney immunity at this time.

Further, even if Jaffe was acting only in his ownership capacity of Go Frac, the Jaffe Firm would have been providing legal representation for the duration of the transaction between Harber and the Sellers. LJH alleges that Jaffe, acting on behalf of the Jaffe Defendants, made one or more calls to, and had conversations with, Harber regarding the sale of oilfield and fracking equipment and related realty (Dkt. #73 at p. 9). When determining the applicability of the attorney immunity doctrine, the Court examines the kind and not the nature of the attorney's conduct. *Chapman Children's Tr. v. Porter & Hedges, L.L.P.*, 32 S.W.3d 429, 442 (Tex. App.— Houston [14th Dist.] 2000, pet. denied). Contacting a potential buyer about a significant sale of property and equipment is not conduct that would be "foreign to the duties of an attorney." *Cantey Hanger*, 467 S.W.3d at 482. LJH also alleges that Jaffe negotiated and prepared the contracts related to the sale (Dkt. #73 at p. 3). This conduct would not be "foreign to the duties of an attorney." *Cantey Hanger*, 467 S.W.3d at 482. The Jaffe Firm did not have a personal stake in the sale of the equipment and realty, and thus, if it was involved in the transaction at all,

6

its actions were purely those of legal representation, which must be protected under the attorney immunity doctrine.[1]

In another argument, LJH asserts that attorney immunity does not apply in a non-litigation context, and the Jaffe Defendants' conduct occurred during a business transaction rather than in an adversarial proceeding (Dkt. #75 at p. 5). The Court disagrees because that "stance is not in line with Texas law." *Iqbal v. Bank of Am., N.A.*, 559 F. App'x 363, 365–66 (5th Cir. 2014). The Texas Supreme Court in *Cantey Hanger* noted that "[t]he majority of Texas cases addressing attorney immunity arise in the litigation context [,] [b]ut that is not universally the case." 467 S.W.3d at 482 n.6. The high court cited two cases "as examples of cases in which courts have applied attorney immunity (or indicated that it could apply) outside the litigation context." *Id.*; *Campbell v. Mortg. Elec. Registration*, No. 03-11-00429-CV, 2012 WL 1839357, at *5–6 (Tex. App.—Austin, May 18, 2012, pet. denied) (applying attorney immunity to dismiss claims against attorney defendants in a foreclosure proceeding); *Reagan Nat'l Advert. of Austin, Inc. v. Hazen*, No. .03-05-00699-cv, 2008 WL 2938823, at *8 (Tex. App.—Austin, July 29, 2008, no pet.) (mem. op.) (noting that while "many of the cases addressing the attorney-immunity doctrine arise in the context of pending litigation, neither case law, nor the doctrine's underlying policy rationales, are limited to that setting"). Thus, the attorney immunity doctrine is not limited to only litigation.

After reviewing the Second Amended Complaint, the Court concludes that LJH has stated plausible claims against Jaffe to defeat a Rule 12(b)(6) motion to dismiss. The Court further concludes, based upon the facts alleged, the Jaffe Firm was acting solely within its legal

---

[1] The Court finds that if Jaffe was acting solely based on his personal interest in Go Frac, his actions could not implicate the Jaffe Firm, as they would be outside the scope of his actions as an attorney. Additionally, other evidence might demonstrate that Jaffe was acting in his capacity as an attorney during the transaction with Harber. At this time, the Court cannot conclusively make its determination based upon LJH's allegations in the Second Amended Complaint.

7

capacity during the entirety of the Harber transaction, and thus claims against the Jaffe Firm must be dismissed under the attorney immunity doctrine.

## CONCLUSION

It is therefore **ORDERED** that Defendants Ira J. Jaffe and Jaffe, Raitt, Heuer & Weiss, P.C.'s Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant Fed. R. Civ. P. 12(b)(6) (Dkt. #74) is hereby **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that LJH, Ltd.'s claims against Jaffe, Raitt, Heuer & Weiss, P.C. are **DISMISSED** with prejudice.

**SIGNED this 2nd day of February, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE